**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

Case No. 2:04-cv-462-FtM-29SPC

WHITNEY INFORMATION NETWORK, )
INC., a Colorado corporation, and    )
RUSS WHITNEY, an individual,          )
                                                        )
             Plaintiffs,                       )
                                                        )
      v.                                             )
                                                        )
VERIO INC., a Delaware corporation,  )
                                                        )
             Defendant.                       )

## MOTION TO DISMISS FOR LACK OF PROSECUTION OR ALTERNATIVELY TO COMPEL DISCOVERY AND FOR SANCTIONS

Pursuant to Local Rule 3.10 of the Middle District of Florida, defendant Verio, Inc., ("Verio"), by and through the undersigned, moves this Court to dismiss this case for want of prosecution.  Alternatively, pursuant to Rule 37 of the Federal Rules of Civil Procedure, Verio moves for an order compelling answers to defendant's interrogatories, served on September 2, 2005; compelling the deposition of Russ Whitney, the corporate representative of Whitney Information Network and of Ronald Simon; for an extension of the discovery deadline for Verio only; and for other sanctions relating to the dilatory and obstructionist discovery tactics employed by the plaintiffs in this case.  Additionally, Verio moves for sanctions against WIN, Whitney, and the law firm of Rothstein, Rosenfeldt, and Adler pursuant to 28 U.S.C. § 1927.  In support of the foregoing, Verio states:

1.      On September 15, 2004, plaintiffs Whitney Information Network ("WIN") and

00248280.WPD

Russ Whitney ("Whitney") filed the instant complaint. In the complaint, they alleged that Verio had violated WIN and Whitney trademarks (Counts I and II), defamed WIN (Count III), and Whitney, and tortiously interfered with the business of WIN and Whitney (Count IV).

2.    The true culprit in these actions was an individual named John T. Reed. Reed was an individual who ran a website, johntreed.com, on which he criticized and allegedly defamed the plaintiffs. Plaintiffs also allege that, by using the names "Whitney Information Network," "Russ Whitney," and the like on his website, John T. Reed somehow infringed on plaintiffs' trademarks and diverted internet traffic from their website to johntreed.com.

3.    For a time, Verio – an internet service provider – allegedly hosted Reed's site. For this reason, WIN and Whitney chose to sue Verio for the acts of Reed as described above.

### DISMISSAL FOR LACK OF PROSECUTION

4.    WIN and Whitney have done nothing to prosecute this case. They have not engaged in discovery, set depositions, submitted expert reports, or otherwise undertaken activity to signify that this case is anything other than a harassment action. See discussion, infra. In fact, the only documents filed by WIN or Whitney in this case since its inception are the complaint, a disclosure of interested parties, a joint scheduling order (which was jointly prepared with Verio), a response to a Verio motion, and various Notices of Unavailability. Further, as discussed below, WIN and Whitney have actively avoided participating in discovery in this matter. No good cause exists for WIN and Whitney's failure to prosecute their case. Accordingly, pursuant to Local Rule

3.10, this matter should be dismissed for lack of prosecution.

<u>D</u>ISCOVERY <u>S</u>ANCTIONS

_____5.    In addition to failing to prosecute their case, WIN and Whitney, along with

the law firm of Rothstein, Rosenfeldt, and Adler (the "Rothstein Firm") have also actively

sought to prevent Verio from conducting any discovery related to this matter.[1]  The

various attempts of WIN, Whitney, and the Rothstein Firm to avoid discovery are as

follows:

**<u>WIN's Dilatory Conduct with respect to Document Disclosure</u>**

6.    Pursuant to court order, WIN and Whitney provided their Rule 26

disclosures on April 1, 2005. At that time, WIN indicated that it possessed certain

documents relating to the facts and circumstances surrounding this case. <u>See</u> Exhibit

"A."

7.    On or about June 6, 2004, Verio requested all documents in plaintiffs'

possession identified in its Rule 26 disclosures.  <u>See</u> Exhibit "B."

8.    In June and July, 2004 the undersigned attempted to contact the

Rothstein Firm to secure the documents identified in its Rule 26 disclosures.  In July,

2005 the undersigned requested the documents by calling the Rothstein Firm and

requesting them.  Similar calls in August, 2005 went unreturned.

9.    Finally, on September 12, 2005, the undersigned once again requested

the documents in writing.  <u>See</u> Exhibit "C."  On September 20, the Rothstein Firm

---

[1]    The Rothstein Firm is included as a culpable party in this request as it has
demonstrated a pattern of dilatory and abusive discovery-related conduct, as is set forth
in great detail <u>infra</u>.

responded that it was sending the documents out for copying. <u>See</u> Exhibit "D."

However, the documents were not received for approximately twenty more days.

### Dilatory Conduct with respect to Depositions

10.    WIN, Whitney and the Rothstein Firm have also stymied Verio's attempts

to take depositions in this case.

11.    In its Rule 26 disclosures, WIN and Whitney identified Russ Whitney and

Ronald Simon as individuals with knowledge of the facts and circumstances

surrounding this case. <u>See</u> Exhibit "A."

12.    Verio repeatedly requested deposition dates for Russ Whitney and

Ronald Simon from the Rothstein Firm, but received no response except that Russ

Whitney was "unavailable."  Despite repeated requests, no alternate deposition dates

were provided.

13.    On July 8, 2005, still waiting for a response from WIN, Whitney, and the

Rothstein Firm, Verio unilaterally set the depositions of Russ Whitney, Ronald Simon

and the 30(b)(6) representative for WIN for July 29, 2004 and August 5, 2004 <u>See</u>

Exhibit "E."  Verio also sent a letter to the Rothstein Firm detailing problems setting the

depositions and requesting cooperation.  <u>See</u> Exhibit "F."  Another letter detailing

problems with setting these depositions was sent on July 22, 2005.  <u>See</u> Exhibit "G."

14.    On July 22, 2005, the Rothstein Firm contacted Verio seeking to postpone

the depositions in order to make a settlement proposal, as none had been received to

date.  Verio was also told at that time that Russ Whitney was not available, although

that assertion was not reduced to writing.  <u>See</u> Exhibit "H."

15.    Based on the discussions, Verio rescheduled the depositions to

September 22, 2005 and September 23, 2005.  <u>See</u> Exhibit "I."  Shortly before these

depositions were to commence, on September 19, 2005, the Rothstein Firm once again

contacted the undersigned seeking to reschedule the depositions.  This time, it was

claimed that the notices were lost, Russ Whitney was out of the country, and the office

might be closed for due to a hurricane.[2]  <u>See</u> Exhibit "J."  The undersigned's paralegal

noted that "it doesn't sound like they've done a thing about notifying their clients – I

don't like your odds."  <u>See</u> Exhibit "J."

      16.    On September 20, 2005 the undersigned agreed to cancel the depositions

on the condition that the depositions be reset for a date certain.  <u>See</u> Exhibit "K."  These

depositions were ultimately reset <u>on dates provided by WIN, Whitney, and the</u>

<u>Rothstein Firm</u> – specifically, on October 6, 2005 and October 7, 2005.  <u>See</u> Exhibit "L."

      17.    On or about October 1, 2005, the undersigned was contacted once again

by the Rothstein Firm, who requested that the depositions be cancelled due to the

Jewish holidays as one attorney, Scott Rothstein, had a conflict.  It is important to note

that, throughout the pendency of this case, Rothstein had very little involvement in the

case – virtually all of Verio's contact was with attorneys Christine Kitterman or Shawn

Birken.  Rosh Hashanah fell on October 4, 2005, and Yom Kippur fell on October 12,

2005.  Neither deposition fell on those dates.[3]

_____

      [2]    Hurricane Rita was, in fact, off the east coast of Florida during the time
this request was made.  However, it was forecast to pass well south of WIN's counsel in
Ft. Lauderdale, and was also forecast to be well into the Gulf of Mexico by the date of
the depositions.  Hurricane Rita was, in fact, well into the Gulf on the deposition date,
and did not affect travel into South Florida at all.

      [3]    The undersigned is Jewish himself, and understands that some very
orthodox Jews take the entire week between Rosh Hashanah and Yom Kippur off for

18.     During that conversation, the Rothstein Firm indicated that they would provide alternate dates and would allow the rescheduling of the subject depositions <u>after</u> the discovery cut-off by stipulation.  However, no additional dates have been forthcoming.

### Dilatory Conduct with Respect to Written Discovery

19.     Finally, WIN and Whitney have failed to answer written discovery.  On or about September 2, 2005, Verio sent interrogatories to WIN and Whitney.  <u>See</u> Exhibit "M."

20.     No responses were received by October 5, 2005 as required by the rules.  On October 11, 2005, the undersigned notified the Rothstein Firm that discovery requests were outstanding.  <u>See</u> Exhibit "N."

21.     On October 11, 2005, the undersigned was advised by the Rothstein Firm that discovery responses were forthcoming.  <u>See</u> Exhibit "O."

22.     No discovery responses have been received to date.

### The Dilatory Conduct of WIN and Whitney in Other Cases

23.     Unfortunately, the dilatory conduct of WIN, Whitney, and the Rothstein Firm is not limited to this case.

24.     Whitney and WIN have a habit of suing their critics, irrespective of the viability of their claims.  <u>See</u> discussion, <u>infra.</u>  However, in each instance WIN, Whitney, and the Rothstein Firm seem unwilling to provide discovery on behalf of WIN or Whitney, and unwilling to deal with opposing counsel in good faith.  Finally, it seems

religious reasons.  However, the undersigned questions why WIN suggested these deposition dates in the first place given the religious conflict.

as if the Rothstein Firm is willing to assist Whitney in his bad-faith attempts to avoid sitting for deposition.

25.    Specifically, WIN, Whitney and the Rothstein firm have engaged it the exact same sort of dilatory conduct complained of by Verio in the following cases: Whitney Information Network v. Reed, case no. 2:04-CV-395-JES-DNF (M.D. Fla.)[4]; Whitney Information Network v. Gagnon and Mazu Publishing, case no: 2:03-CV-677-FtM-29SPC (M.D. Fla.); and Whitney Information Network v. Dotson, case no. 03-62052-CIV-ALTONAGA/Turnoff (S.D. Fla).  The pattern in each case is exactly the same: WIN and / or Whitney file a complaint, engage in some early disclosures, and then, with the help of the Rothstein Firm, resist any additional discovery.  Specific orders issued in those cases, including some issued by this very Court, are instructive:

**The Reed Case**

26.    In Whitney v. Reed, the defendant, John T. Reed, was negatively impacted by the dilatory conduct of WIN, Whitney, and the Rothstein Firm.  In his Motion for Protective Order and to Schedule Depositions and Mediation, Reed points out that he "could not get any response . . . regarding [Reed's] attempts to schedule Whitney's depositions . . . ." despite four separate requests for dates.  Exhibit "P" at ¶ 9. Reed ultimately scheduled WIN and Whitney's depositions unilaterally for the days before and after the date of his own deposition, which had been set by WIN and Whitney.  Id. at ¶ 15.  WIN and Whitney then unilaterally changed the date of Reed's deposition so that it was to occur on the same day as the deposition Reed had just set.

---

[4]    Whitney may have given a partial deposition in this case after numerous delays

Id. at ¶ 16.  WIN and Whitney then unilaterally rescheduled Reed's deposition again for a later date.  Id. at ¶ 16.

27.    On April 20, 2005, Magistrate Douglas Frazier entered an order indicating that " . . . there is little cooperation in the scheduling of depositions . . . . " and directing the parties to cooperate in the scheduling of depositions.  See Exhibit "Q."

28.    On June 3, 2005, Reed was again forced to seek the intervention of this Court due to WIN and Whitney attempting to schedule depositions for days on which they knew, or should have known, that Reed would be traveling.  See Exhibit "R."  In this filing, Reed further noted that, although WIN and Whitney had been ordered to pay Reed's costs related to a previous cancellation, they had failed to do so.  Id.

29.    On June 28, 2005, WIN and Whitney once again requested a continuance the depositions of WIN and Whitney, on the grounds that one of the attorney's at the Rothstein Firm, Scott Rothstein, was scheduled to go on a pre-planned vacation, and that Russ Whitney demanded that only Rothstein represent him.  See Exhibit "S."  This motion was denied.

30.    Ultimately, the matter was settled, apparently some time around the date Russ Whitney's deposition was to occur.  It is unknown whether any depositions actually took place or what the terms of settlement were, as all settlements in the Reed case are apparently confidential.

## The Gagnon Case

31.    In Whitney v. Gagnon, Whitney made claims similar to those in the case at bar against Gagnon and Mazu Publishing.  This case was heard by this very Court.

32.    As had been their pattern, in January 2005 Whitney and WIN petitioned

this Court to extend the deadlines for mediation and discovery.  This Court denied the request.  In its order denying Whitney and WIN's Motion for Reconsideration, this Court noted: "the Court has provided the Plaintiff's the opportunity to seek relief regarding issues and Plaintiff's chose not to act in a timely manner."  <u>See</u> Exhibit "T."

33.    Whitney and WIN filed a motion for voluntary dismissal on March 4, 2005.  However, this motion was withdrawn when it became apparent that this Court would force Whitney and WIN to pay the Gagnon defendants' costs if the case was voluntarily dismissed.  <u>See</u> Exhibit "U" at ¶ 14.  Nevertheless, despite the fact that liability for costs was hanging over their head, WIN and Whitney renewed their Motion for Voluntary Dismissal on March 25, 2005.  <u>Id.</u>

34.    The Gagnon defendants in this action, apparently incensed at the behavior of Whitney and WIN, actually filed an opposition to the Second Motion for Voluntary Dismissal.  <u>See</u> Exhibit "V."  The Gagnon defendants pointed out, as Verio seeks to, that WIN and Whitney had engaged in an abusive pattern of litigation in other cases.  Exhibit "V" at ¶¶ 4-8.

35.    The Gagnon defendants also pointed out that Whitney and WIN appeared to dismiss their case to avoid depositions.  <u>Id.</u> at ¶ 25.

36.    Finally, the Gagnon defendants noted that, despite the absolute dearth of legal authority to support their claims "[Whitney and WIN] have been free to bring such specious claims, inflicting financial damage through the litigation process on anyone who attempts to warn consumers as to Whitney's criminal past and violation of trade laws."  <u>Id.</u> at 10.

37.    On March 30, 2005, this Court granted WIN and Whitney's Motion for

Voluntary Dismissal.  This Court noted: "The Court finds a pattern of neglect by plaintiffs in the prosecution of this case, and that plaintiffs have been litigious but not routinely diligent, but finds insufficient evidence of bad faith."  Exhibit "W" at 3.  This Court then ordered WIN and Whitney to immediately pay certain costs incurred by the Gagnon defendants, and to pay attorney's fees to the Gagnon defendants if the case was re-filed.  Id.

## The Dotson Case

_____38.    This case involved a dispute between WIN and an individual accused of using a proprietary WIN training program.  As in the other cases, the Dotson defendants were met with resistance at every turn when they attempted to schedule Whitney's deposition.  The Dotson defendants wrote on May 20, 2005:

> **"Russ Whitney . . . and the Plaintiff's counsel have engaged in bad faith discovery conduct and have interfered with the discovery process in connection with Mr. Whitney's refusal to appear for deposition, even after being served with a deposition subpoena. Defendants . . . have been attempting to take the deposition of Mr. Whitney since December, 2004 and have been met by obfuscation, avoidance of service of process, misrepresentation of the record and reneging on agreements at each turn.**

Exhibit "X."

39.    The Dotson defendants then detailed five occasions on which Whitney's deposition was noticed and then cancelled.  Exhibit "X" at 2-3.  They then noted "this

detailed chronology makes it clear that the Plaintiff [WIN] and Mr. Whitney have set out to eliminate the Defendants' ability to depose Russ Whitney." Id.

40.    As the court granted Summary Judgment in favor of the Dotson defendants, it did not rule on the Dotson defendant's Motion to Compel, and no sanctions were ordered.

## LAW AND ARGUMENT

41.    Federal Rule of Civil Procedure 37 provides that, upon a party's failure to make discovery, a court may take a number of different actions, including striking of claims or defenses, striking of pleadings, or dismissing an action.  Fed. R. Civ. P. 37(b).

42.    Dismissal is a severe sanction to be reserved tor litigants are "willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents, and in so doing deprive litigants of an opportunity to use the courts as a serious dispute-settlement mechanism. Sussman v. Salem, Saxon & Nielsen, P.A., 154 F.R.D. 294 (M.D. Fla. 1994); Malatulea v. Suzuki Motor Co., Ltd., 987 F.2d 1536 (11th Cir. 1993).  If a court finds a party's actions willful, it should not automatically dismiss a case, but must try to craft an appropriate sanction that fits the particular offense, while keeping the deterrence and punishment goals of Rule 37 in mind.  Id.

43.    This Court also has the inherent power to sanction litigants and their attorneys for vexatious, bad-faith conduct outside of Rule 37.  See Roadway Express v. Piper, 447 U.S. 752, 764-65, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980)(holding that federal courts possess inherent sanctions power); Carlucci v. Piper Aircraft Corp., 775 F.2d 1440 (11th Cir. 1985)(sanctions imposed pursuant to Rule 37, 28 U.S.C. §

1927, and "inherent sanctions power" all affirmed).  As indicated above, dismissal is a serious sanction to be used only in extreme circumstances.  Id.

_____44.___In addition to simply dismissing an action, a court may also assess fees and costs against parties for bad conduct.  28 U.S.C. § 1927 provides that district courts may assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith.  See discussion, infra.

### Sanctions against Whitney, WIN and the Rothstein Firm

45.    The instant case is just such a case in which the draconian measure of dismissal is appropriate.  While the dilatory and obstructionist actions exhibited in this case – repeated cancellation of depositions based on dubious excuses, failure to make mandatory disclosures in a timely manner, and failure to answer discovery – are not, standing alone, especially egregious, the conduct of Whitney, WIN, and the Rothstein Firm in other lawsuits indicate that they go to incredible lengths to thwart discovery. The court must consider their conduct in other cases as well as this one in crafting an appropriate sanction.

46.    Specifically, this Court should consider the pattern of the prior conduct of WIN, Whitney, and the Rothstein Firm in the Reed, Gagnon, and Dotson matters.  In those cases WIN and/or Whitney, with the express aid of the Rothstein Firm, avoided discovery by (1) unilaterally cancelling depositions; (2) simply refusing to schedule depositions; and (3) refusing to answer discovery.  Ultimately, at least two of those cases appear to have been dismissed when it became clear that Whitney and the Rothstein Firm were out of ways to avoid Whitney's deposition.

47.    This Court should also consider that imposition of a severe penalty such

as dismissal does not need to be predicated by lesser sanctions.  <u>Malatulea v. Suzuki</u>

<u>Motor Co., Ltd.</u>, 987 F.2d at 1544.  If it appears that lesser sanctions would be

ineffective, the vain gesture of first imposing lesser sanctions is not required.  <u>Id.</u>  Given

the conduct of WIN, Whitney and the Rothstein Firm in other cases, it seems clear that

the mere imposition of costs would not be sufficient.  In the <u>Reed</u> and <u>Gagnon</u> matters,

both of which were heard by this Court, WIN and Whitney were ordered to pay costs as

a result of their dilatory conduct.  <u>See</u> <u>Exhibit R</u>; <u>Exhibit W</u>.  That did not stop them from

engaging in the same sort of conduct in the instant case.

48.    If this Court does not take drastic measures, it is clear that Whitney and

WIN, with the help of the Rothstein Firm, are going to continue to use the court system

in bad faith to simply harass anyone who has the temerity to criticize Whitney or WIN.

They will continue to repeat the pattern of causing their opponents to expend needless

money on litigation, despite the fact that Whitney, WIN, and the Rothstein firm

ultimately know that they have no plan to engage in discovery, and specifically no plan

to allow Whitney's deposition to take place.

49.    In order to drive home the point – made a number of times before, but

apparently never fully absorbed – that, if they want to sue someone, WIN and Whitney

will have to engage in meaningful discovery, this Court should strike WIN and Whitney's

pleadings, dismiss the complaint filed by WIN and Whitney, and reserve jurisdiction to

award attorney's fees and costs.

50.    Additionally, it seems clear at this point that the Rothstein Firm knows or

should know that WIN and Whitney have no intent to engage in meaningful discovery in

any case in which Whitney is subject to deposition.  In addition to sanctioning WIN and

Whitney, this Court should sanction the Rothstein Firm based on their pattern of bad-faith conduct in furtherance of WIN ane Whitney's untenable actions.  As noted above, and as demonstrated by the voluminous exhibits to this motion, the Rothstein Firm has been just as responsible for problems conducting discovery as WIN and Whitney themselves.  In at least three other cases, depositions appear to have been cancelled at the last minute without regard to procedure.  At least two other attorneys and one pro se defendant have complained that the Rothstein Firm appeared to be operating in bad faith.  The Rothstein Firm is acting as a mere extension of its client without regard for the law or the ethical constraints of practice.  It is therefore appropriate that the Rothstein Firm or its successor entities be held jointly and severally liable for any sanctions ordered against WIN and Whitney.

51.    Additionally, irrespective of Rule 37, this Court has the inherent power to sanction litigants and their attorneys for vexatious, bad-faith conduct.  See Roadway Express v. Piper, 447 U.S. 752, 764-65, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980)(holding that federal courts possess inherent sanctions power); Carlucci v. Piper Aircraft Corp., 775 F.2d 1440 (11th Cir. 1985)(sanctions imposed pursuant to Rule 37, 28 U.S.C. § 1927, and "inherent sanctions power" all affirmed).  A court's authority in this regard is "broader and more flexible" than the authority to sanction enumerated by statute.  Van Bronkhorst v. Safeco Corp., 529 F.2d 943 (C.A.Wa. 1976).  WIN, Whitney, and the Rothstein Firm have continually abused the discovery process in this very Court.  This Court should therefore impose sanctions under its inherent sanctions power based on their cumulative conduct.

## Attorney's Fees and Costs

52.    28 U.S.C. § 1927 provides that district courts may assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith.  It has been held that under 28 U.S.C. § 1927, when a court finds that counsel has multiplied proceedings 'unreasonably and vexatiously', counsel must be required to satisfy personally the fees incurred as a result of such conduct. Dictiomatic, Inc. v. USF&G, 127 F.Supp. 2d 1239 (S.D. Fla. 1999) quoting Steinberg v. St. Regis/Sheraton Hotel, 583 F.Supp. 421 (S.D.N.Y.1984); Davidson v. Allis-Chalmers Corp., 67 F.Supp. 1532, 1538 (W.D.Mo.1983) Id. at 1247; See Malatulea v. Suzuki Motor Co., Ltd., 987 F.2d at 1544 (assessing fees against law firm for egregious discovery abuses). It is difficult to imagine a pattern of cases in which such conduct is more clear than the other WIN and Whitney cases and the case at bar.

53.    If this Court is unwilling to impose such a drastic sanction as dismissal, despite WIN and Whitney's clear disregard for the rules governing discovery and misuse of the court system, a lesser sanction is clearly in order.  28 U.S.C. § 1927; Fed. R. Civ. P. 37.  Verio would request, at a minimum, the following:

a.    That WIN and Whitney be ordered to produce responses to Verio's interrogatories immediately;

b.    That Russ Whitney, Ronald Simon, and the 30(b)(6) witness for WIN be ordered to sit for deposition at a date and time to be set by the Court at the undersigned's office in Raleigh, North Carolina or at the Verio corporate offices in Englewood, Colorado, and that WIN and Whitney pay the cost of those depositions.

c.    That discovery be extended for Verio only to allow for meaningful follow-up to the discovery provided by WIN and Whitney and the depositions to be

conducted as set forth above, and that WIN and Whitney's responses to these discovery requests be provided on an expedited basis, within ten days from the date of service of the requests.

        d.    That the attorney's fees and costs related to the bringing of this motion and that other attorney's fees and costs related to Verio's attempts to obtain discovery in this case be taxed against WIN and Whitney, and the law firm of Rothstein, Rosenfeldt, and Adler.

        e.    Other such relief as this Court deems just and proper.

### CONCLUSION AND REQUEST FOR HEARING

54.    WIN, Whitney and the Rothstein Firm appear to have operated in bad faith in at least four cases filed in federal court.  In the case at bar, they have obstructed discovery by failing to answer interrogatories, unilaterally cancelling depositions, and failing to allow meaningful discovery to occur.  Additionally, in three other cases litigated before this Court and in the Southern District of Florida, WIN, Whitney, and the Rothstein Firm have engaged in the exact same form of vexatious, indefensible conduct.

55.    On March 30, 2005, this Court assessed costs against WIN and Whitney in the <u>Gagnon</u> matter for their dismissal of a case at the last possible instant.  The dismissal looked for all the world like an attempt to avoid the deposition of Russ Whitney, as was pointed out by the Gagnon defendants.  In the <u>Reed</u> case – also litigated in the Middle District of Florida – and the and the <u>Dotson</u> case, litigated in the Southern District of Florida, Whitney and WIN failed to provide discovery and engaged in obstructionist tactics.

00248280.WPD              16

56.    It is high time that this Court consider the pattern of conduct exhibited by WIN, Whitney, and the Rothstein firm in those three cases and in the case at bar and take action.  Clearly, the sanctions imposed in <u>Gagnon</u> were not enough to dissuade WIN, Whitney, and the Rothstein Firm from their previous pattern of bad-faith conduct. An imposition of serious sanctions, such as dismissal of the instant case and the award of attorney's fees and costs to Verio will perhaps, once and for all, indicate to WIN, Whitney, and the Rothstein Firm that the courts are not their personal enforcement mechanism, to be used without regard for the rules that their opponents work hard to live by.

57.    This Court has the power under Rule 37, 28 U.S.C. § 1927, and its own inherent power, to strike WIN and Whitney's pleadings and order WIN, Whitney, and the Rothstein Firm to pay Verio's fees and costs.  Verio requests that this Court take such action.

58.    Additionally, Verio respectfully requests that this Court set an evidentiary hearing on this motion, and further requests that the hearing be scheduled with enough notice for Verio to secure the attendance of witnesses from California, Ohio, and Ft. Meyers.

WHEREFORE, defendant, Verio, Inc., respectfully requests the relief detailed above, as well as such other relief as the Court deems just and proper.

This the 9th day of December, 2005.

LEWIS & ROBERTS, P.L.L.C.

BY: _____
J. Andrew Fine

N.C. State Bar No. 33194
1305 Navaho Drive, Suite 400 (27609)
P. O. Box 17529
Raleigh, North Carolina 27619-7529
Tel:    (919) 981-0191
Fax:(919) 981-0199

## CERTIFICATE OF SERVICE

I, J. Andrew Fine, do hereby certify that the foregoing *document* was served upon all parties of record by electronic mail and U.S. Mail to their counsel of record at the addresses indicated below.

This the 9th day of December, 2005.

LEWIS & ROBERTS, PLLC

By:_____
J. Andrew Fine
N.C. State Bar No. 33194
1305 Navaho Drive, Suite 400 (27609)
P. O. Box 17529
Raleigh, NC 27619
Tel:    919/981-0191
Fax:    919/981-0199

## SERVED:

Scott W. Rothstein, Esq.
Michael A. Pancier, Esq.
Christina M. Kitterman, Esq.
Shawn Birkin, Esq.
Rothstein Rosenfeldt Adler
300 Las Olas Place
300 SE 2nd Street, Suite 860
Fort Lauderdale, Florida 33301

00248280.WPD

18